## IN THE MATTER OF WILLIAM FETTER.

1. The clause of the constitution of the United States, which directs the surrender of a fugitive from justice upon the demand of the executive authority of the state from which he fled, contains no grant of power, but is the mere regulation of an existing right on the part of the state making the surrender.

2. Every sovereign state may, at its option, surrender a criminal to the government against whose laws he has offended.

3. The United States government have never acknowledged the right of foreign nations to demand the surrender of fugitives from justice independent of treaty stipulations.

4. A fugitive from justice from either of the United States may, under the provision of the constitution of the United States (ART. IV, § 2,) be arrested and detained in this state, in order to his surrender, before a requisition is actually made upon the executive for his surrender.

5. It is not necessary, in order to warrant the surrender or detention of the fugitive, that the crime with which he stands charged should constitute an offence at the common law.

6. To warrant the surrender or detention of the fugitive, it must appear that the crime with which he stands charged was committed within the state from which he is alleged to be a fugitive

The prisoner was brought before the Chief Justice, at *chambers*, on the fifth day of April, 1852, by virtue of a writ of *habeas corpus*, directed to the keeper of the common jail of the county of Mercer.

By the return to the writ, it appeared that William Fetter was detained in custody, as a fugitive from justice from the state of California, by virtue of a commitment, issued on the twentieth day of March, 1852, by William C. Howell, esq., a justice of the peace of the county of Mercer.

The following facts were developed upon the hearing, being either duly verified by affidavit or admitted by counsel : The prisoner is a citizen of, and resident in the state of Pennsylvania, carrying on business in the state of New Jersey.　On the 7th of October, 1851, a requisition was made by the governor of California upon the governor of Pennsylvania for the surrender of the said William Fetter, as a fugitive from justice from the state of California, where he "stands accused of the crime of *grand larceny*, committed in the county of San Francisco, in said state."　The requisition is accompanied by an exemplified copy of an indictment, found by the grand jury of the county of San Francisco, at the term of August, A. D. 1851, against the said William Fetter.　The indictment charges, " that William Fetter, on the 30th of October, 1850, at the city of San Francisco, was the bailee of two hundred and thirty ounces of gold dust, the proper goods, chattels, and moneys of C. B., and of the value of $3700; and being such bailee, he, the said William Fetter, afterwards, to wit, on the same day and year last aforesaid, at said city, did convert the said gold dust to his own use, with intent to steal the same, contrary to the force, form, and effect of the statute in such case made and provided, and against the peace and dignity of the people of the state of California."

In compliance with the requisition thus made, the governor of the state of Pennsylvania, on the 18th of March last, issued an executive warrant for the arrest of the prisoner, and his surrender to the accredited agent of the state of California. Before the arrest was effected under the authority of the state of Pennsylvania, the prisoner came into the state of New Jersey, where he remained until the time of his arrest, under the authority of this state.　The commitment directs that he shall .be detained in custody " to await the requisition of the governor of California, or otherwise be thence delivered by due course of law."

Upon the return of the writ of *habeas corpus*, an application was made for the discharge of the prisoner, which was argued by *Beasley*, for the prisoner, and *Lanning*, for the prosecution.

*Beasley*, for the prisoner.

There is no power to arrest an alleged fugitive from justice, before the demand for his surrender is actually made upon the executive.

Both the constitution of the United States and the act of congress respecting fugitives from justice, regard all the proceedings for the surrender of the fugitive as based upon a demand actually made upon the executive. *Cons. U. S. Art. IV*, § 2; *Act of Congress*, 12 *February*, 1793, § 1; *Ewing's N. J. Just.* 268.

No offence is pretended to have been committed against the laws of this state. There is no statute in this state, as there is in several of the other states, authorizing the arrest of the fugitive, preparatory to a surrender, before the requisition is actually made.

The act of congress limits the time during which the prisoner may be detained, when he is arrested, after a demand for his surrender is made. If arrested before the requisition is made, there is no limit to the time during which the prisoner may be detained in custody.

The statutes of New York, Massachusetts, and other states direct the proofs to be made, and the mode of proceeding under the statutes. There is no such regulation in New Jersey. If the practice of arresting and detaining fugitives, prior to an executive requisition for their surrender, has grown up in this state without statutory authority, the court will see that it is not made an instrument of oppression.

The demand, by the act of congress, can only be made upon a charge of treason, felony, or *other crime.* For what other crime may he be demanded? Where a crime is *heinous* in its character, it has been a question whether, by the law of nations, the fugitive should not be surrendered. 2 *Sumner* 486; 2 *Brocken.* 492; 14 *Peters* 440; 1 *Kent's Com.* 361.

The crime charged in this case is not of so heinous a nature as to warrant a surrender by the law of nations. The power to arrest and detain the prisoner, if it exist at all in this state, must arise from the necessity of the power to effectuate the act of congress.

The phrase "*other crime*" in the act of congress, means *known crime*, not statutory enactments peculiar to each state. A citizen of this state cannot be arrested for a violation of the mere statute law of another state. The offence charged to warrant the arrest must be a common law crime and a crime of magnitude. 1 *Kent's Com.* 37, *5th ed.*

The charge is not properly verified. 1 *Sand. Sup. Co. R.* 701.

There is no common law offence charged. The essence of the crime of grand larceny at common law is the felonious taking. A statute never can constitute an act of grand larceny where the original taking was lawful. There is no competent evidence that the act charged in the indictment is a crime by the law of California. 9 *Wend.* 212.

*Lanning.* The uniform practice in New Jersey has been to arrest and detain the fugitive prior to the requisition. Without such power, the requirement of the constitution is nugatory.

The proof is clear that the crime has been committed in California, and that the prisoner is a fugitive from justice in that state. He has already been demanded of the executive of Pennsylvania. That requisition proving ineffectual, measures have been taken to procure a requisition from California upon the executive of this state. Time should be allowed for that purpose.

The CHIEF JUSTICE. The constitution of the United States (Art. IV, § 2,) provides, that a person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime. It is insisted that the whole authority conferred by the constitution, or fairly deducible from it, is consequent upon the *demand* made for the surrender of the fugitive. That the prisoner has committed no offence against the sovereignty of this state which can justify his arrest, and that consequently any

arrest by authority of this state for a crime committed without its jurisdiction prior to a demand actually made under the provision of the constitution for the surrender of a fugitive, is unauthorized, and his detention illegal.

In considering this question, it is material to observe that this clause of the constitution does not contain a grant of power. It confers no right. It is the regulation of a previously existing right. It makes *obligatory* upon every member of the confederacy the performance of an act which previously was of doubtful obligation. All writers upon the law of nations agree that it is the *right* of every sovereign state to expel from its territory, or to surrender to another nation in amity with it, an offender against the laws of such friendly nation. No state is bound to harbor criminals within its bosom, but may at its option surrender them to the government against whose laws they have offended. Whether any government is *bound* to make such surrender upon the demand of the sovereign of another nation in amity with it, upon the principle of the comity of nations, is another question, upon which jurists and courts are not agreed. It is held by some writers of high authority upon the law of nations, that such duty does exist. *Vattel B.* 2, *ch.* 6, § 76 ; 2 *Burlam.* 179, § 23, 27 ; *Story's Conf. of Laws,* § 627.

The obligation was recognised by Chancellor Kent, in the case of Washburn, a fugitive from Canada to the state of New-York, (4 *John. Ch. R.* 106) and also by the Supreme Court of Canada, in the case of Joseph Fisher, a fugitive from justice in the state of Vermont. *Rex* v. *Ball,* 1 *Amer. Jurist* 297 ; 1 *Kent's Com.* 37.

Other writers insist that the right, as between independent sovereign nations, to demand of each other fugitives from justice, does not exist independent of treaty obligations, and such appears to be the decided weight of authority in this country. The United States government have never recognized the right, unless under treaty stipulations. *Commonwealth* v. *Deacon,* 10 *Serg. & R.* 135 ; *Case of Jose Ferrara Dos Santos,* 2 *Brock.* 493 ; *U. States* v. *Davis,* 2 *Sumner* 486 ; *Story on Conf. of Laws,* § 626 ; 8 *Story's Com. on Con.,* § 1802 ;

*Jefferson's Letter to Washington, 7th November,* 1791 ; *Jefferson's Letter to Genet,* 1793, 1 *Amer. State Papers* 175 ; *Story's Letter to Gov. Everett, 6th June,* 1835, cited in 2 *Life of Story* 197 ; 1 *Kent's Com.* 37, *note C.*

But, whatever difference of opinion may exist in regard to the *obligation* resting upon one nation to surrender a fugitive from justice, upon the *demand* of another nation in amity with it, there is no denial and no question of the *right* of every sovereign nation to surrender fugitives within its territory. The whole effect of the constitution was to confer upon each member of the confederacy a *right to demand* from every other member of the confederacy a fugitive, and to make *obligatory* the surrender which was before discretionary. If, then, there exists, independent of constitutional provision or treaty obligation, a right in every sovereign state to surrender criminals against the laws of other countries, there must also, of necessity, exist in every state the power of arresting and detaining such fugitive. The mere power of surrender, without the power of arrest and detention, would be nugatory. It is remarkable, indeed, that both the constitution and the act of congress of 1793 assume that the one power is a necessary consequence of the other. Neither the constitution nor the law confers, except by implication, the power of arrest or imprisonment.

We find this right of arrest and imprisonment by the civil magistrates of offenders against the laws of another government recognized from a very early period.  Thus, in *Rex* v. *Hutchinson,* 29 *Car. II,* 3 *Keble* 785, the court of K. B., upon *habeas corpus,* refused to bail a prisoner, who was committed on suspicion of murder committed in Portugal. And in the case of *Col. Lundy,* 2 *Vent.* 314, it was agreed on a consultation of all the judges, that there was nothing in the *habeas corpus* act to prevent a person guilty of a capital offence in Ireland (then a distinct kingdom) being sent there to be tried.

In the case of *Rex* v. *Kimberley* 2 *Stran.* 848, the prisoner was committed by a justice of the peace in England for a felony committed contrary to an Irish act of parliament, in order

In the matter of William Fetter.

to be transmitted to Ireland to be tried, the offence having been committed there.

On being brought before the King's Bench by *habeas corpus*, Strange, for the prisoner, moved for his discharge, or for bail, on the ground that justices of the peace in England had no power over crimes committed in Ireland, which was a distinct kingdom; and that it was against the *habeas corpus* act to remove the prisoner to Ireland. But the court, upon the authority of the cases above cited, remanded the prisoner, observing that if he was not removed to Ireland in a reasonable time, application might be again made to the court for his discharge. See also, *Mure* v. *Kaye*, 4 *Taunt.* 34; 1 *Chit. Cr. Law* 14, 46.

In the case of *Daniel Washburn*, the prisoner was detained in custody by virtue of a *mittimus* from the recorder of the city of Troy, under charge of a crime committed in Canada. Upon the prisoner being brought up by a writ of *habeas corpus*, Chancellor Kent said, " it is the law and usage of nations, resting on the plainest principles of justice and public policy, to deliver up offenders charged with felony and other high crimes, and fleeing from the country in which the crime was committed into a foreign and friendly jurisdiction. When a case of that kind occurs, it becomes *the duty* of the civil magistrate, on due proof of the fact, to commit the fugitive, to the end that a reasonable time may be afforded for the government here to deliver him up, or for the foreign government to make the requisite application to the proper authorities for his surrender." 4 *John. Ch. R.* 106.

If this principle be sound, as applied to the intercourse of independent foreign nations, in support of the right to reclaim fugitives from justice, it applies with far greater force and clearness in support of the express provision of the constitution, making the surrender of fugitives from justice obligatory upon every member of the confederacy. The denial of the power to arrest and detain an offender until the demand for his surrender be actually made, would, it is manifest, render the provision of the constitution well nigh nugatory. If a person committing murder, robbery, or other high crime in one

state, may, by crossing a river, or an imaginary line, avoid arrest or detention until an executive requisition and order for his surrender may be obtained, the execution of the criminal law would be impotent indeed. Sound public policy, good faith, a fulfilment of the requirements of the constitution, all require that the arrest and detention be made of the offender, wherever he may be found, preparatory to a demand and surrender.

The exercise of the power has repeatedly been sanctioned by the American courts.

In *The People* v. *Schenck*, 2 *John. R.* 479, the prisoner having been indicted for stealing a gun, the jury found specially, that he stole the gun in New Jersey, and brought it into the state of New York. The court held that the act, as found, constituted no crime against the laws of New York ; but they ordered the prisoner to be detained in prison for three weeks, and that notice be given to the executive of the state of New Jersey that the prisoner was detained on a charge of felony committed in this state.

In the matter of *Thomas F. Goodhue,* in the mayor's court of the city of New York, 1 *Wheeler's Crim. Cas.* 427, upon the return of the *habeas corpus,* it appeared that the prisoner was detained on three different commitments. The first commitment was under the statute for apprehending and punishing disorderly persons, under which he was committed to Bridewell for sixty days. The second and third commitments stated that the prisoner is charged, on the oaths of R. W. and others, with having, at Lexington, in the state of Kentucky, fraudulently and by false pretences, and exhibiting forged letters of credit, obtained divers sums of money of several individuals and mercantile houses with intent to defraud.

Riker, recorder, said, "It appears upon the oath of a witness, which oath is taken on competent authority, that the prisoner has committed a public offence against the laws of the state of Kentucky, and that he is a fugitive from the justice of that state. The constitution of the United States provides expressly for his arrest. The constitution is sacred, and we are bound by it. It is the supreme law of the land. It may

be said, that though it be true that on the demand of the executive power of Kentucky, the prisoner may doubtless be given up, yet until he is demanded he is to be held at large. This cannot be the meaning of the constitution. *We may hold a fugitive, to give a reasonable time to demand him.* The decision of the court, therefore, is, that Thomas F. Goodhue be remanded and detained in custody six weeks, to give time to the executive of Kentucky to demand him, under and in pursuance of the constitution of the United States."

The prisoner was subsequently brought before Chancellor Kent, by *habeas corpus*, on the 14th of October following, and the chancellor, considering that a sufficient time had elapsed since the commitment, in August preceding, for the executive of the state of Kentucky to have demanded the prisoner, according to the constitution, and no such demand appearing to have been made, ordered his discharge. *In the matter of Goodhue,* 1 *Rogers' City Hall Recorder;* 2 *John. Ch. R.* 198.

In *The Commonwealth* v. *Deacon,* 10 *Serg. & Rawle* 135, Tilghman, Chief Justice, though he denied the right in that case to hold the prisoner, on the ground that the government would not surrender him, held the following language: " I grant that when the executive has been in the habit of delivering up fugitives, or are obliged by treaty, the magistrates may issue warrants to arrest of their own accord (on proper evidence), in order the more effectually to accomplish the intent of the government, by preventing the escape of the criminal. On this principle, we arrest offenders who have fled from one of the United States to another, even before demand has been made by the executive of the state from which they fled." Here is a statement of the existence of the practice not only, but a vindication of the principle upon which it rests, *viz.* to accomplish the intent of the government, and to carry into effect the provision of the constitution. *S. C. 2, Wheeler's Crim. Cases* 17.

I am of opinion, both upon principle and authority, that a fugitive from justice, from either of the United States, may, under the provision of the constitution, be arrested and de-

tained in this state preparatory to his surrender, before a requisition is actually made by the executive of the state where the crime is committed. It is an exercise of power essential to the full operation of the constitution, and has been sanctioned by a long and uniform course of practice.

I am aware that the power was denied in the case of *The People* v. *Wright*, 2 *Caines* 212. But that case does not appear to have undergone mature deliberation, and must be considered as overruled by the late authorities.

Nor is the principle impugned by the fact, that the legislatures of several of the states have made express provision by law for the arrest and detention of fugitives from justice prior to an executive requisition for their extradition. It amounts to no more than a regulation of the exercise of an existing right.

II. It is further objected, that the offence with which the prisoner stands charged is not a crime within the meaning of the constitution. Admitting the position taken by counsel in argument, that the offence specified does not constitute larceny at the common law, it is nevertheless certified by the governor of California to be grand larceny under the laws of that state. It is, moreover, an offence of a highly immoral character, and as appears by the bill of indictment, which must be regarded as *prima facie* evidence of the fact, is a *crime* by the law of the state of California.

III. The original affidavit upon which the warrant issued was clearly defective, as it does not allege that any crime had been committed by the prisoner within the state of California, from which he is alleged to be a fugitive. *In the matter of Hayward*, 1 *Sand. Sup. Co. R.* 701.

But inasmuch as it appears, by the subsequent affidavit and the evidence adduced upon the hearing, that the alleged crime was committed in California ; that the defendant stands charged with the crime there, and is a fugitive from justice in that state, he is not entitled to be discharged, but must be continued in custody. Should a demand for his surrender not be made by the executive of California within a reasonable time, the prisoner will be entitled to his discharge.

Ordered accordingly.

On the 27th of June, 1852, the prisoner was again brought before the Chief Justice upon a writ of *habeas corpus*, and it appearing, to the satisfaction of the court, that a sufficient time had elapsed since the commitment for a demand for the surrender of the prisoner as a fugitive to have been made by the executive of California, and no such requisition appearing to have been made of the executive of this state, it was ordered that the prisoner be discharged, and he was discharged accordingly.

CITED *in Matter of Voorhees*, 3 *Vr.* 149.